■ ALLEN SWIFT et al., Respondents, v. 130 WEST 57TH CORPORATION, Appellant.—Judgment entered August 1, 1968, insofar as appealed from, reversed, on the law and the facts, without costs and without disbursements, and the first cause of action dismissed, without prejudice to further participation by the plaintiff, if so advised, in the proceedings now pending or which may

be initiated before the City Rent Agency; further, the judgment in favor of plaintiff is vacated, and the moneys deposited with the Director of Finance of the City of New York are directed to be released to appellant. As asserted in defendant's answer, and as raised by motion at trial, the question of the controlled or uncontrolled status of apartment 13D-14D should have first been relegated to the expertise of the City Rent Administrative Agency and not have been essayed by the trial court. Insistence upon such a logical priority of procedure has been articulated before. *(Confederated Props.* v. *Nosek,* 2 A D 2d 383; *Arbeitman* v. *Goldman,* 10 A D 2d 874.) And the plaintiff was adequately put on notice to this effect by the city's letter of August 28, 1964, inviting an agency proceeding to determine the true status of the accommodations. Knowledge that apartment 13D-14D had been "controlled" can hardly be imputed to the defendant when the agency itself declares that as to it there is an·open question. Nor does an action for overcharge lie pursuant to Y51–11.0 of the Administrative Code, before an order of the agency has been enunciated by the agency and violated by the landlord. Nothing in the record on this appeal provided any basis for recovery of alleged overcharges with respect to apartment 13D-14D as it existed on January 1, 1964. When the apparently noncontrolled 14D was added to controlled 13D, the resulting unit was, insofar as the City Rent Agency and the Rent Control Law were concerned, a new accommodation, the rent control status of which had never been determined by the city rent agency. We must also observe that the tenant could not, without disingenuousness, seriously entertain the notion that $287.50 per month, for eleven rooms, represented a fair rental for an apartment in a prime midtown Manhattan location. Concur — Stevens, P. J., Capozzoli, McGivern and Nunez, JJ.; Eager, J., dissents in the following dissenting memorandum. Eager, J. (dissenting). I would reverse and vacate the judgment, insofar as appealed from, but would remand the action for supplemental pleadings and trial, with a stay of the action pending the prosecution of proceedings before the City Rent Administrator to determine whether the subject premises were controlled and, if so, for determination as to the amount of controlled rental. If the premises were in fact controlled in accordance with the orders and regulations of the city agency, and if the plaintiff establishes "that the apartment for which the rent was paid is the same accommodation for which the rent had been fixed" *(Garcia* v. *Deibert,* 10 A D 2d 349, 351), then this action was properly brought. ( See *Powell* v. *Park Lex. Realty Corp.,* 304 N. Y. 960.) The premises were originally controlled and, on the present record, I conclude that it may not be held that apartment 14D became decontrolled as of February 1, 1947 or that the subject premises were decontrolled as of January 1, 1964. Defendant did not establish the non-controlled status of the premises either by a proper showing of a commercial use before and until February 1, 1947 (Administrative Code, § Y51–3.0, subd. e, par. 2, cl. [i], subd. [1]; see *Matter of Lord Management Corp.* v. *Weaver,* 11 N Y 2d 180), or by showing an order of exemption by the Rent Administrator. (See *Matter of Sipal Realty Corp.* *[Dankers]*, 8 N Y 2d 319.) The issues of fact should properly await a determination by the Rent Administrator with regard to the controlled status of the premises.